## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| UBID, INC., ) | Case No.:_____ |
|      Plaintiff, ) | |
| ) |  Judge:_____ |
|      v. ) | |
| ) | Magistrate:_____ |
| THE GODADDY GROUP, INC. and ) | |
| GODADDY.COM, INC, ) | |
| ) | **Jury Trial Demanded** |
|      Defendants. ) | |

## COMPLAINT

NOW COMES the Plaintiff, UBID INC, ("uBID") by and through its undersigned

Counsel of Record, complains and alleges, upon information and belief, except as to those

paragraphs applicable to itself, which are based on personal knowledge, against Defendants THE

GODADDY GROUP INC. and GODADDY.COM, INC (collectively "GoDaddy") as follows:

### NATURE OF THE ACTION

1.     This is an action under Anticybersquatting Consumer Protection Act ("ACPA" or

"Act"), *15 U.S.C.A. § 1125(d)*, as a result of GoDaddy's illegal internet scheme that generates

revenue from the unauthorized taking, use, and monetization of uBID's valuable marks. uBID

seeks redress for damages caused to it under the ACPA for GoDaddy's use, registration,

trafficking in and/or licensing of "Deceptive Domains", which are domain names that are

identical or confusingly similar to uBID's valuable, protected, distinctive and famous marks.

2.     GoDaddy illegally achieves monetary gain by knowingly diverting internet traffic

to said Deceptive Domains. The Deceptive Domains in this case are "parked pages" meaning

they display no substantive content and are used exclusively for the display of revenue

generating Google AdWords advertisements. GoDaddy derives revenue each time an internet

1

user is directed to the Deceptive Domains and an advertisement is "clicked". GoDaddy has been deriving revenue from more than one hundred Deceptive Domains solely with the intent to profit from advertising on domain names that are confusingly similar to uBID's valuable marks.

## SUBJECT MATTER JURISDICTION AND VENUE

3.      This is an action for cybersquatting under 15 U.S.C. § 1125(d). This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1331.

4.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim and the actual harm to Plaintiff occurred in this District by reason of the Defendants' conduct as alleged below.

## PARTIES AND PERSONAL JURISDICTION

5.      Plaintiff uBID is a Delaware corporation with its principal place of business located at Chicago, Illinois 60631. uBID is the leading asset recovery solutions company for the world's most trusted brands having sold over $2 billion of excess inventory over the last eleven years.

6.      Defendant The GoDaddy Group Inc. is an Arizona corporation with its principle place of business located at 14455 N. Hayden Rd., Suite 219 Scottsdale, AZ 85260. Its self-described "flagship company" is Defendant GoDaddy.com Inc. which purports to be the world's leading ICANN-accredited domain name registrar for .COM, .NET, .ORG, .INFO, .BIZ and .US domain extensions. It claims to have over twenty-nine (29) million domain names under its management, and boasts that "(a)s an ICANN-accredited domain registrar, GoDaddy has more names under management than any other registrar and has an array of internet based services." https://www.godaddy.com/gdshop/about.asp?ci=3823.

2

7.      GoDaddy offers its services in interstate commerce, including but not limited to registration, certification, hosting, parking, redirecting, transfers, and monetization through its "parking" program that monetizes participating domains with Google AdWords advertisements. GoDaddy has a number of subsidiary companies, including: Wild West Domains, Inc., Domains by Proxy, Starfield Technologies, and Blue Razor Domains.

8.      This Court has personal jurisdiction over Defendants The GoDaddy Group Inc. and GoDaddy.com Inc., because they conduct substantial business within this district, have engaged in acts or omissions within this Judicial District causing injury, have engaged in acts outside this Judicial District causing injury within this Judicial District, and have engaged in conduct related to the unlawful activities at issue in this action causing injury and harm in this Judicial District, and/or has otherwise made or established contacts with this judicial district sufficient to permit the exercise of personal jurisdiction.

## PLAINTIFF'S BUSINESS

9.      uBID was founded in 1995 and offers and provides a full array of commercial and internet-based auction and sales services. uBID maintains a website at www.uBID.com and RedTag.com which offer products and services in interstate commerce, and generates revenue from: (a) charging the "margin difference" between purchase and selling price on the auction style and fixed price completed transactions on its websites, and (b) through collecting a commission from Certified Merchants (CM), on all items sold from these merchants through its internet-based platforms at both uBID.com and RedTag.com. uBID uses their Marks, as defined below, in connection with its internet based company, and more specifically in providing products and services in interstate commerce.

10.      uBID owns the trademarks UBID.com, REDTAG.com and UBID, and trade name

UBID (collectively the "uBID Marks"). The uBID Marks were publicized as of 1997 and have been featured on the Internet, in various forms of media advertisements and in stories published throughout the United States.

11.    The uBID Marks are widely known and recognized among consumers, retailers and manufacturers, including but not limited to, members of the resale community.

12.    The uBID Marks are unique and distinctive and, as such, designate a single source of origin.

13.    uBID's Internet website, www.ubid.com, has been registered and used since 1997 and uses the uBID Marks. The website also provides information on many of the products and services offered. uBID's other internet website, www.RedTag.com has been registered since 2000 and the current website in operation since September 2008.

14.    uBID's business operations are heavily internet based, and therefore it depends upon internet traffic, and the associated ability of internet users to freely access its website, for the generation of revenue.

15.    uBID utilizes several United States registered patents, in connection with its internet business operations, including: U.S. Patent Nos. 5,845,265; 6,202,051; 6,266,651 and pat. pending.

16.    uBID's Marks are valid and enforceable trademarks. uBID owns the following United States trademark registrations for its Marks:

a.    Trademark:    UBID THE MARKETPLACE YOU CAN TRUST; Registration No. 3065399; Goods and Services Int'l Class 035. US 100 101 102. G & S: On-Line Trading Services in Which the Seller Posts Products to be Auctioned and Bidding is Done Via the Internet; On-Line Retail Store Services Featuring Consumer Electronics, Computer Products,

and Multimedia Entertainment Products; First Use: September 24, 2004. Registration Date: March 7, 2006;

b.      Trademark:    UBID.COM  THE  BRAND  NAME  MARKETPLACE; Registration No. 3048683; Goods and Services Int'l Class 035. US 100 101 102. G & S: On-Line Trading Services in Which the Seller Posts Products to be Auctioned and Bidding is Done Via the Internet; On-Line Retail Store Services Featuring Consumer Electronics, Computer Products, and Multimedia Entertainment Products; First Use: November 30, 2003. Registration Date: January 24, 2006;

c.      Trademark:    UBID.COM;  Registration  No.  2991806;  Goods  and Services Int'l Class 035. US 100 101 102. G & S: On-Line Trading Services in Which the Seller Posts Products to be Auctioned and Bidding is Done Via the Internet; On-Line Retail Store Services Featuring Consumer Electronics, Computer Products, and Multimedia Entertainment Products; First Use: November 30, 2003. Registration Date: September 6, 2005;

d.      Trademark:    UBID.COM;  International  Registration  No.  0960560; Goods and Services Int'l Class 035. US 100 101 102. G & S: Online trading services in which the seller posts products to be auctioned and bidding is done via the internet; online retail store services featuring consumer electronics, computer-related products, home appliances, home improvement, automotive, sports and recreational, multimedia entertainment, toys, jewelry, fragrances, skin care, cosmetics, purses, hand bags, wallets, sunglasses, hats, tools, art, furniture, storage, organization, pet supplies, crafts, food and wine, gardening and planting supplies, and lawn and garden decor; First Use: January 1, 1997. Registration Date: September 6, 2005;

e.      Trademark:    UBID;  Registration  No.  2519050;  Goods  and  Services Int'l Class 035. US 100 101 102. G & S: Disseminating advertising matter for others via

electronic communications networks and promoting the goods and services of others through banner advertisements and through the electronic promotion of and auctioning of the goods and services of others online via the global computer network; electronic retailing services by auction and other means, namely, online retail store and auction services in the fields of computer-related, electronic, home appliance, home improvement, automotive, sports and recreational products, offered via the global computer network; First Use: May 1, 1998. Registration Date: December 18, 2001; and

f.      Trademark:    UBID; Registration No. 2229515; Goods and Services US 002 005 022 023 029 037 038 050. G & S: [catalogs for computer-related products, namely, hardware, software, peripherals, accessories, supplies, books and instructional materials]; IC 035. US 100 101 102. G & S: disseminating advertising for others and promoting the goods and services of others through the distribution of printed publications and via on-line telecommunications networks; telephone shop-at-home services, mail-order catalog services, [retail store services] and electronic retailing services via global computer network, all in the field of computer-related products, namely, hardware, software, peripherals, accessories, supplies, books and instructional materials; First Use: May 1, 1998. Registration Date: March 2, 1999.

g.      Trademark:    REDTAG.COM; Registration No. 2535096, Goods and Services IC 035 US 100 101 102. G & S; [computerized on-line retail services offering a variety of consumer merchandise]. First Use: November 10, 1998. Registration Date: November 10, 1998.

17.     uBID owns numerous domain names which include but are not limited to: www.ubid.com, www.Redtag.com, www.youbid.com, www.Bidville.com, www.ubid.org,

6

www.ubid.net, www.ubidmotors.com, and www.ubid.tv, for commercial use.

18.     uBID has valid, enforceable, protected and valuable legal rights to the use of said

domain names, trademarks, taglines, and trade names, collectively the Distinctive and Valuable

Marks, as it has used these Distinctive and Valuable Marks in interstate commerce, for business

purposes, in connection with the sale of goods, services, and its resale operations, as well as,

having been featured on the Internet and used in other various forms of advertisements.

## DEFINITIONS

19.     For purposes of this Complaint, the following terms will be deemed to have the

following meanings:

*A.*     ***Deceptive Domains:*** as used in this Complaint, means: a domain that is

tasted, registered, licensed, monetized, trafficked in and/or otherwise used, for commercial gain,

that is identical to or confusingly similar to a Distinctive and Valuable Mark.

*B.*     ***Distinctive and Valuable Marks***: as used in this Complaint, means:

venerable, valuable, distinctive, famous, registered or common law trademarks, trade names,

logos, famous names, corporate names, domain names, and other such distinctive/valuable marks

of uBID.

*C.*     ***Domain Names***: as used in this Complaint, means: a textual identifier

registered within the Domain Name System. A domain name comprises two or more

components, each separated by a period. The right-most component is the top-level domain,

such as .com or .org. Most domain names are registered directly within a top-level domain, e.g.

google.com. Domain names consist of letters, numbers, periods, and hyphens, but no other

characters.

*D.*     ***Domain Tasting***: as used in this Complaint, means: the practice of domain

registrants registering a domain name to assess its profitability for the display of online advertising. Via the tasting procedure, a registrant may return a domain name within five (5) days for a full refund. Domain tasters typically delete domain names that they project to be unprofitable, or delete domain names to avoid the registration fee as part of the "Domain Kiting" process.

        **E.**    ***Monetize / monetization:*** as used in this Complaint, means: the practice of using a domain/website for commercial gain by generating revenue from internet advertising placed/displayed/associated with said domain/website.

        **F.**    ***Parked Domains:*** as used in this Complaint, means: a domain which is undeveloped and contains little or no content, except for revenue generating advertisements.

## GODADDY'S BUSINESS

20.    GoDaddy advertises and procures customers by offering "free parking" of a registrants domain name. Under GoDaddy's "Parked Page Service", GoDaddy will park the registrants page and place advertisements on web page while GoDaddy is granted the right to collect and retain all revenue obtained from the advertising.

21.    Pursuant to the Domain Name Registration Agreement between GoDaddy and its customers, GoDaddy is the authorized licensee of the registrant for the purpose of placing advertisements for commercial gain on the registrant webpage. Paragraph 8 of GoDaddy's Domain Name Registration Agreement provides:

        **8.**    **Parked Page Service**

        The Parked Page Service, includes, but is not limited to, the parking of pages on Go Daddy nameservers, and Starter/For Sale web pages (all parked pages, collectively, the "Parked Page"). For every domain name registered, Go Daddy will provide the Parked Page service free to its customers. Go Daddy will provide You with these services as long as You abide by the terms and

conditions set forth herein and in each of Go Daddy's policies and procedures found here.

If You are using Go Daddy's Parked Page services, You agree that Go Daddy may point the domain name or DNS to one of Go Daddy's or Go Daddy's affiliates web pages, and that they may place advertising on Your web page and Go Daddy specifically reserves this right. Go Daddy also reserves the right to collect and retain all revenue obtained from such advertising. You may terminate Your use of the Parked Page service at any time through Your online account manager.

If You are using Go Daddy's Parked Page service, You are responsible for ensuring that any content placed on Your Parked Page by You or anyone on Your behalf conforms to all local, state, federal, and international laws. Further, You are responsible for ensuring the legal copyright to any images, text, or other web site elements not provided by Go Daddy. In order to use Go Daddy's Parked Page service, You must have a domain name registered with Go Daddy. Go Daddy is not responsible for making back-up copies of Your web site; this is solely Your responsibility. You agree that Go Daddy may place advertising on Your Parked Page and Go Daddy specifically reserves this right. Go Daddy also reserves the right to collect and retain all revenue obtained from such advertising.

22.     GoDaddy, as the authorized licensee of the registrants, has used and trafficked in the domain names listed below, with bad with intent to profit from the Distinctive and Valuable Marks of uBID. Screen shots of the domain are attached hereto and incorporated herein as *Group Exhibit A, Parts 1-7*.

9

b4ubid.com

b4youbid.com

buyredtag.com

didyoubid.com

euubid.com

helpubid.com

iauctionubid.com

iauctionyoubid.com

ineedubid.com

mercerubid.com

mystuffubid.com

pubid.com

ubid2rent.com

ubid2save.com

ubid4.com

ubid4buyer.com

ubid4buyers.com

ubid4homes.com

ubid4loans.com

ubid4me.com

ubid4media.com

ubid4realty.com

ubidandbuild.com

ubidanesthesia.com

ubidantiqueauctions.com

ubidash.com

ubidauctionsale.com

ubidauctionsales.com

ubidaz.com

ubidb.com

ubidbail.com

ubidbeds.com

ubidcolorado.com

ubidconstruction.com

ubidcriminallawyers.com

ubidd.com

ubidda.com

ubiddiamonds.com

ubiddirect.com

ubidebay.com

ubidecarenol.com

ubidentity.com

ubidevice.com

ubidevices.com

ubidexchange.com

ubidfl.com

ubidflights.com

ubidforjobs.com

ubidforloans.com

ubidforrealty.com

ubidfulfillmentservice.com

ubidhd.com

ubidhealthcare.com

ubidhoa.com

ubidholiday.com

ubid-homes.com

ubidhomesmd.com

ubidhouses.com

ubiditubuyit.com

ubiditusa.com

ubidlegal.com

ubidlending.com

ubidlimo.com

ubidliquidators.com

ubidlocalmarket.com

ubidlocalmarketplace.com

ubidmarketplace.com

ubidmattress.com

ubidmd.com

ubidmortgage.com

ubidmortgagerates.com

ubidmortgages.com

ubidmybail.com

ubidmycase.com

ubid-now.com

ubidnowrealty.com

ubidonline.com

ubidonmailing.com

ubidonpostcards.com

ubidonprint.com

ubidot.com

ubidpa.com

ubidpgh.com

ubidr.com

ubidrates.com

ubidremodel.com

ubidremodeling.com

ubidrent.com

ubidrentals.com

ubidsell.com

ubidsidework.com

ubidsold.com

ubidstyle.com

ubidta.com

ubidtools.com

ubidtransport.com

ubidufly.com

ubidvideo.com

ubidvillas.com

ubidwork.com

ubidyardsale.com

ugbid.com

uwantubid.com

yasubid.com

youbid4homes.com

youbid4media.com

youbidanesthesia.com

youbidattorney.com

youbidbail.com

youbidbeds.com

youbidbranson.com

youbidding.com

youbid-europe.com

youbidforhome.com

youbidforhomes.com

youbidforjobs.com

youbidformycar.com

youbidforrealty.com

youbidfurniture.com

youbidisell.com

youbiditall.com

youbidlawyer.com

youbidmailingservice.com

youbidmattress.com

youbidmedia.com

youbidmybail.com

youbidmycase.com

youbidnow.com

youbidnowrealty.com

youbidonmailing.com

youbidonpostcards.com

youbidonprint.com

youbidoo.com

youbidpostcards.com

youbidrx.com

1800redtag.biz

1800redtag.com

1800redtag.info

1800redtag.net

1800redtag.org

23.     As part of its services, GoDaddy also offers its customers a "cash parking" service whereby the domain registrant pays a fee to allow GoDaddy, through its advertising partner, Google, to place ads on the registrant's web page. The revenue generated through this

15

advertising is then split between the registrant, GoDaddy, and GoDaddy's advertising partner, Google.

24.     The "CashParking" provision of the GoDaddy's Domain Registration Agreement provides as follows:

> CashParking is a service that enables you to earn money on your parked domains. If you associate your domains with your CashParking account, our advertising partner places context-relevant advertisements on your page. Each time a visitor clicks a displayed advertisement, you receive a share of the generated click-through revenue based on your CashParking plan (60% to 80% of the generated revenue). The amount you receive and the price you pay for the CashParking service depends on the plan you select. You can add an unlimited number of domains to your CashParking account.

25.     GoDaddy, as the authorized licensee of the registrants under the CashParking service, has used and/or trafficked in the following domain names, with bad with intent to profit from the Distinctive and Valuable Marks of uBID: ubiddz.com, youbididoit.com, youbidido.com, ubidmotor.com ubidido.com ubididoit.com Screen shots of the domain are attached hereto and incorporated herein as *Group Exhibit B*.

26.     As part of its services GoDaddy also offers an auction service to sell and/transfer a domain names for a fee. On February 9, 2009 GoDaddy trafficked in the infringing Deceptive Domains with bad faith intent to profit from uBID's Distinctive and Valuable Marks: ubiddiamonds.biz, ubidpests.biz, ubidfume.com, ubidpests.info, ubidpests.net, ubidtermite.biz, ubidorbuyit.com, ubidfume.info, ubidfume.net, ubidfume.org, ubidtermite.info, ubidtermite.net, ubidtermite.org, ubidirect.com, ubiditproject.com, ubiditprojects.com, ubid4.me, ubidauctionsale.com, ubidauctionsales.com, ubidsold.com, ubid-online.com, ubidless.com, ubid.ws, ubid.info, and ubid.name.

## COUNT I

## THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT

27.     Plaintiff hereby repeats and re-alleges all of the preceding paragraphs as thought fully set forth herein.

28.     In 1999, Congress passed the Anticybersquatting Consumer Protection Act ("ACPA" or "Act"), *15 U.S.C.A. § 1125(d)*, to protect consumers and American businesses, to promote the growth of online commerce, and to provide clarity in the law for trademark owners.

29.     15 U.S.C. 1125(d) provides:

(d) **Cyberpiracy prevention**

(1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—

(i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii) registers, traffics in, or uses a domain name that—

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

(III) is a trademark, word, or name protected by reason of section 706 of title 18 or section 220506 of title 36.

30.     15 U.S.C. 1125 (d)(E) provides:

As used in this paragraph, the term "traffics in" refers to transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration.

31.     Accordingly, Congress enacted the ACPA to include not only individuals and companies who register domain names, but rather, to apply equally to three classes of persons/entities: (1) registrants of the Deceptive Domains; (2) anyone who "uses" the domain name which is defined as the registrant or the "authorized licensee" of the registrants of the Deceptive Domains; and (3) anyone who "traffics in" Deceptive Domains, which refers to anyone involved in any transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration, whether or not the person is the registrant of the Deceptive Domain.

32.     Congress drafted the ACPA to prevent the use, licensing, pledging, trafficking in, or any other exchange of consideration for the use of the Deceptive Domain Names. GoDaddy's conduct in monetizing the infringing Deceptive Domains is the very conduct which Congress declared to be illegal.

33.     As alleged herein, GoDaddy's acted as the authorized licensee of the registrants and used the infringing Deceptive Domains in violation of the ACPA, with bad faith intent to profit from uBID's Distinctive and Valuable Marks.

34.     GoDaddy's acts as alleged herein constitute the use of and trafficking in infringing Deceptive Domains, in violation of the ACPA with bad faith intent to profit from uBID's Distinctive and Valuable Marks.

35.     GoDaddy's acts as alleged herein constitute cyberpiracy, cybersquatting, and/or typosquatting, in violation of the ACPA.

36.     uBID's Distinctive and Valuable Marks are distinctive, famous, venerable, valuable, and or federally registered at the USPTO at the time GoDaddy, registered, trafficked in

or acted as the authorized licensee of a registrant and used the Deceptive Domains.

37.     The infringing Deceptive Domains as identified in paragraphs 25, 28, and 29 are identical or confusingly similar to uBID's Distinctive and Valuable Marks.

38.     GoDaddy does not have any intellectual property rights or any other rights in uBID's Distinctive and Valuable Marks.

39.     None of the infringing Deceptive Domains consist of the legal name of GoDaddy, or a name that is otherwise commonly used to identify GoDaddy.

40.     GoDaddy has never made any prior use of any of the infringing Deceptive Domains in connection with the *bona fide* offering of any goods or services.

41.     GoDaddy trafficked in and used the infringing Deceptive Domains to divert consumers from uBID's websites to websites accessible from the infringing Deceptive Domains. GoDaddy thereby created a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the infringing Deceptive Domain websites.

42.     GoDaddy offered to transfer, sell, or otherwise assign the infringing Deceptive Domains for financial gain without having used, or having the intent to use, the infringing Deceptive Domains in the *bona fide* offering of any goods or services.

43.     GoDaddy has used, trafficked in, and acted as registrant's authorized licensee in the infringing Deceptive Domains which it knew were identical or confusingly similar to the protected and Distinctive and Valuable Marks of uBID's, which were distinctive at the time of the registration and continue to be distinctive.

44.     GoDaddy's trafficking in, and/or use, as the authorized licensee of the registrant, of the infringing Deceptive Domains constitutes cybersquatting in violation of *15 U.S.C. §*

19

*1125(d).*

45.     By reason of Defendants' acts alleged herein, remedy at law is not adequate to compensate them for the injuries inflicted by GoDaddy. Accordingly, uBID is entitled to preliminary and permanent injunctive relief pursuant to *15 U.S.C. § 1116.*

46.     By reason of GoDaddy's acts alleged herein, uBID is entitled to recover GoDaddy's profits, actual damages and the costs of the action, or, on uBID's election, statutory damages under *15 U.S.C. § 1117*, in an amount up to One Hundred Thousand Dollars ($100,000) per Deceptive Domain name infringement. Further, this is an exceptional case making uBID eligible for an award of attorneys' fees under *15 U.S.C. § 1117.*

## <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests judgment as follows:

I.      That the Court enters a judgment that Defendants have violated the rights of Plaintiff in the Distinctive and Valuable Marks.

II.     The Court adjudge and decree that Defendants, their agents, representatives, employees, assigns and suppliers, and all persons acting in concert or privity with them, be preliminarily and permanently enjoined from the following activities:

a.      Registering, using, or trafficking in any manner, in any domain name that incorporates, in whole or in part, the Distinctive and Valuable Marks or any name, mark or designation confusingly similar thereto ("Deceptive Domains");

b.      Using Plaintiff's Distinctive and Valuable Marks, or any other

name, mark, designation or depiction in a manner that is likely to cause confusion ("Deceptive Domains") regarding whether Defendants are affiliated or associated with or sponsored by Plaintiff;

c.    Registering any domain name using an automated process that is intended to create (or which could result in the creation of), Deceptive Domains;

d.    Engaging in typosquatting;

e.    Engaging in cybersquatting;

f.    Engaging in cyberpiracy;

g.    Engaging in domain tasting based on the Distinctive and Valuable Marks; and

i.    Assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to above.

III.    The Court adjudge and decree that Defendants be ordered to pay statutory damages under 15 U.S.C. § 1117(d), on election of Plaintiff, in an amount of One Hundred Thousand Dollars ($100,000) per domain name infringement; or alternatively the Court adjudge and decree that Defendants be ordered to account to Plaintiff and disgorge, all profits they have derived by reason of the infringing Deceptive Domains; and

IV.    The Court adjudge and decree that Defendants be ordered to pay Plaintiff's reasonable attorney fees, prejudgment interest, and costs of this action;

## <u>JURY TRIAL DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all

of the claims asserted in this Complaint so triable.


Dated: <u>April 3, 2009</u>                         Respectfully submitted,

                                              /s/Robert M. Foote
                                              Robert M. Foote, Esq. (#03124325)
                                              Matthew J. Herman, Esq. (#06237297)
                                              Stephen W. Fung, Esq. (#06289522)
                                              FOOTE, MEYERS, MIELKE & FLOWERS, LLC
                                              28 N. First St.
                                              Suite 2
                                              Geneva, Illinois 60134
                                              Telephone: (630) 232-6333
                                              Facsimile:  (630) 845-8982

                                              Kathleen C. Chavez (#06255735)
                                              CHAVEZ LAW FIRM, P.C.
                                              28 N. First St.
                                              Suite 2
                                              Geneva, Illinois 60134

                                              Peter L. Currie, Esq. (#06281711)
                                              THE LAW FIRM OF PETER L. CURRIE, P.C.
                                              536 Wing Lane
                                              Saint Charles, Illinois 60174

                                              ***Attorneys for Plaintiff***

22