UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UBID, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 09 C 2123 |
| | ) | |
| THE GODADDY GROUP, INC. and | ) | |
| GODADDY.COM, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Defendants The GoDaddy Group, Inc. and GoDaddy.com, Inc. ("GoDaddy")
have filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, to
transfer the case. For the reasons stated below, we grant Defendants' motion to dismiss
for lack of personal jurisdiction. The motion to transfer is denied as moot.

## BACKGROUND

Plaintiff uBID, Inc. ("uBID") is located in Chicago but its business operations
are largely internet-based. Manufacturers and retailers contract with uBID to sell their
excess inventory at reduced prices through uBID's website. In order for uBID to
generate revenue, customers must find their way to its website. To ensure that internet
users are directed to its website, uBID has purchased and trademarked several internet
domain names, including www.uBID.com. Internet users who type a uBID-owned

domain name into their web browser are directed to its website to take advantage of uBID's services.

GoDaddy, an Arizona corporation, is one of the leading domain name registration and website hosting companies in the country. Customers access GoDaddy's website and pay a small fee to register a domain name for their business or other organization. Once a particular domain name is registered, anyone who types that name into an internet browser will be directed to the registrant's website. GoDaddy has no employees in Illinois, does not rent or own property in Illinois, and has no bank accounts in Illinois. GoDaddy requires all of its customers to submit any disputes against it to the power of Arizona courts. Though its website is accessible to customers all over the world, GoDaddy provides its web-based services using equipment located in Arizona.

Though GoDaddy is largely Arizona-based, it maintains some connections with Illinois. It receives 3.19% of its revenues from Illinois customers and GoDaddy sometimes communicates with its Illinois customers by email, regular mail, and telephone. In addition, GoDaddy has placed advertisements at Illinois sporting venues as part of a national advertising campaign. Professional drivers and athletes who are sponsored by GoDaddy, and display GoDaddy logos on their equipment, have participated in competitions within Illinois. Employees of the corporation have attended races in Illinois in which sponsored drivers competed.

For registrants who have yet to create a website to associate with their registered name, GoDaddy supplies a Parked Page to which visitors will be directed until the registrant creates an active website of their own. Parked Pages are essentially blank pages except for some content-specific advertisements. When a visitor to the Parked Page clicks on an advertisement, GoDaddy receives a share of the advertising revenue generated. GoDaddy also offers a CashParking program where registrants can share in any advertising revenue obtained from the Parked Pages associated with their domain names. In addition, GoDaddy performs an online auction service where individuals and companies can buy or sell previously registered domain names. These registration, Parked Page, CashParking, and auction processes are entirely automated.

The dispute between uBID and GoDaddy concerns GoDaddy's provision of services to certain third-party registrants of domain names that are similar to uBID's web addresses or that contain the letters "ubid" in the address. GoDaddy is aware that some of its customers register domain names that are similar to existing domains or trademarks; it recently submitted a patent application[1] for a system to filter online advertisements to prevent registrants of these types of domain names from profiting

---

[1] The application sought to patent a system that examines the domain name associated with a particular Parked Page and prevents any advertisements for companies with domain names similar to the Parked Page domain. For example, if the parked page were associated with the domain name "youbid123.com" this system would prevent advertisements for uBID from being displayed on that parked page.

- 3 -

from others' trademarks. GoDaddy maintains, however, that it must rely on trademark holders to bring domain names containing their trademarks to GoDaddy's attention because of the inherent difficulty of monitoring the high volume of registrations GoDaddy conducts. Illinois residents have registered two domain names through GoDaddy that are similar to uBID's own trademarked names. GoDaddy receives advertising revenue from these web addresses through its Parked Page programs.

On April 6, 2009, uBID filed suit against GoDaddy under the Anticybersquatting Consumer Protection Act. 15 U.S.C. § 1125(d). The crux of uBID's argument is that GoDaddy's provision of services to the domain holders at issue constitutes the "traffi[cking] in, or use[]" of uBID's mark "with bad faith intent to profit from the mark" as prohibited by the statute. *Id*.  GoDaddy now moves to dismiss for lack of personal jurisdiction, or, in the alternative, to transfer the case to the District of Arizona.

## LEGAL STANDARD

A plaintiff bears the burden of establishing the existence of personal jurisdiction over a nonresident defendant. *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). When a district court rules on a motion to dismiss based on the submission of written materials, the plaintiff need only make a prima facie case of personal jurisdiction. *Purdue Research Found. v. Synofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In assessing whether the plaintiff has satisfied this burden, the

plaintiff is entitled to the resolution in its favor of any conflicts in the affidavits. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997). However, we accept as true any facts in the defendant's affidavits that remain unrefuted by the plaintiff. *Goldfarb*, 565 F.3d at 1020 n.1.

For a district court's exercise of personal jurisdiction over a defendant to be proper in a federal question suit, the defendant must have "sufficient contacts with the United States as a whole" (i.e., either residency in or doing business in any U.S. state) and must also be amenable to process. *See United States v. Martinez de Ortiz*, 910 F.2d 376, 381 (7th Cir. 1990). Fed. R. Civ. P. 4(k)(1), which governs amenability to process, states that any defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located" is amenable to process.

The Illinois long-arm statute, 735 ILCS 5/2-209©, grants the state's courts the power to exercise jurisdiction on any basis permitted by the due process clause of the Illinois or United States Constitutions. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 714 (7th Cir. 2002). For an exercise of jurisdiction over a nonresident defendant to satisfy federal due process, the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation marks omitted).

The extent of jurisdiction that can be exercised depends on the amount of contact a nonresident has with the forum state. A state may exercise general jurisdiction (jurisdiction over any suit involving the nonresident) over a nonresident defendant when it possesses "continuous and systematic general business contacts" with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 412 (1984). An exercise of specific jurisdiction is constitutionally permissible when the defendant has purposefully established contact with the forum state and the suit arises out of those contacts. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997).

With these principles in mind, we turn to GoDaddy's motion.

## DISCUSSION

The parties do not dispute that GoDaddy has sufficient contacts with the United States as a whole to be subject to the personal jurisdiction of a United States court, so we confine our analysis to whether GoDaddy is amenable to process under Illinois law. uBID argues that GoDaddy is subject to both general and specific personal jurisdiction in Illinois. We will first address whether GoDaddy is subject to general jurisdiction in Illinois and then consider whether we may exercise specific jurisdiction.

## I.     General Jurisdiction

uBID asserts that GoDaddy is subject to general personal jurisdiction in Illinois courts. The constitutional standard for general jurisdiction "is considerably more

stringent than that required for specific jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003). To satisfy this standard, GoDaddy must possess sufficient contacts with Illinois such that it could be considered "constructively present in the state" and should reasonably expect to answer in that state's courts "in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Id*. (emphasis in original).

uBID contends that GoDaddy has established continuous and systematic contacts with Illinois through its advertising activities in Illinois along with its sales to Illinois residents. GoDaddy's marketing-related activities in Illinois were part of a national advertising campaign, but these types of activities alone are not sufficient to support an exercise of general jurisdiction. *See IDS Life Ins. Co. v. Sunamerica Life Ins. Co.*, 137 F.3d 537, 540 (7th Cir. 1998). Rather, courts generally require some targeting of the forum state's customers before finding that a defendant's advertising activities in the forum supported the exercise of general jurisdiction. *See Elayyan v. Melia*, 571 F. Supp. 2d 886, 899-900 (N.D. Ind. 2008); *Szakacs v. Anheuser-Busch Cos., Inc.*, 644 F. Supp. 1121, 1124-25 (N.D. Ind. 1987). Without demonstration of an Illinois-specific focus, GoDaddy's sporadic contacts with Illinois as a result of its national advertising campaign do not support an exercise of general jurisdiction.

GoDaddy's sales to Illinois customers are also insufficient to permit an exercise of general jurisdiction. A nonresident defendant's sales to customers in a forum state, alone, do not support an exercise of general jurisdiction. *See, e.g., Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1174 (9th Cir. 2006) ("a corporation does not necessarily submit to general jurisdiction in every state in which it merely sells a product"). The burdens of general jurisdiction are heavy; a defendant subject to general jurisdiction must visit a state's courts to answer all manner of litigation arising out of any act of the defendant that occurred anywhere. Due process requires that a nonresident defendant have either established a presence in the state (through an in-state agent, office, or employees) or evidenced an intent to establish such a presence (through forum-directed advertising and solicitation efforts) before a state may impose the duties of a resident upon a nonresident defendant. Some of uBID's own cases demonstrate the point. *See Publ'ns Int'l, Ltd. v. Burke/Triolo, Inc.*, 121 F. Supp. 2d 1178, 1183 (N.D. Ill. 2000) (finding general jurisdiction only when defendant had Illinois sales agent).[2]

---

[2] uBID also cites *George S. May Intern. Co. v. Xcentric Ventures, LLC*, 409 F. Supp. 2d 1052 (N.D. Ill. 2006) as favorable precedent. In *Xcentric*, the court found "continuous and systematic" contacts when the defendant received online donations from forty-seven Illinois residents, sold thirteen books to Illinois residents, and maintained an interactive website. Though we do not dispute that the court concluded that general jurisdiction could be exercised in that case, we do not agree with the reasoning that led to that result.

uBID has not shown that GoDaddy possesses a tangible presence within Illinois or made any efforts to establish such a presence sufficient to permit the exercise of general jurisdiction. GoDaddy has no offices, agents, or employees in Illinois and provides its services from equipment located outside of Illinois. Furthermore, GoDaddy has never demonstrated a desire to create an Illinois presence through an Illinois-specific advertising campaign or direct solicitations of Illinois customers. Though GoDaddy obtains a not insignificant amount of revenue from Illinois customers, GoDaddy's sales of its services (rendered entirely via the internet) to Illinois residents is insufficient, alone, to sustain an exercise of general jurisdiction absent some greater showing of presence within Illinois.[3]

Based on the foregoing analysis, we conclude that GoDaddy is not subject to general jurisdiction in Illinois.

## II.    Specific Jurisdiction

uBID also contends that GoDaddy is subject to specific jurisdiction in Illinois because (1) GoDaddy purposefully availed itself of transacting business in Illinois by

---

[3] uBID spends a large portion of its brief arguing that GoDaddy is subject to general jurisdiction under the framework articulated in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.* 952 F. Supp. 1119 (W.D. Pa. 1997). The court in *Zippo* employed its "sliding scale" to determine whether defendant possessed sufficient "minimum contacts" with the forum to sustain an exercise of specific jurisdiction. *Id*. at 1122 ("[plaintiff] concedes that if personal jurisdiction exists in this case, it must be specific"). We decline to extend the reasoning of *Zippo* to the general jurisdiction context.

contracting with two Illinois residents to register and park domain names containing variations of the word "ubid"; and (2) GoDaddy's contracting with the two Illinois registrants at issue caused uBID harm in Illinois.

### A.    Purposeful Availment

uBID contends that GoDaddy established minimum contacts with Illinois for specific jurisdiction purposes by transacting business in Illinois and thereby purposefully availing itself of the privileges and benefits of Illinois law. To sustain an exercise of specific jurisdiction, a plaintiff must show "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State[.]" *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235 (1958)). However, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Id*. at 474. The defendant's conduct and connection with the forum state must be such that "he should reasonably anticipate being haled into court there." *Id*. A defendant cannot be subject to specific jurisdiction based on random or fortuitous contacts. *Id*. at 475. The only facts that are relevant to the specific jurisdiction inquiry are those that "either bear on the substantive legal dispute between the parties or relate to the operative facts of the case." *Goldfarb*, 565 F.3d at 1024.

uBID points to two contracts between GoDaddy and Illinois residents as sufficient to support an exercise of specific personal jurisdiction over GoDaddy. uBID argues that GoDaddy's collecting revenue from, and providing services to, these two Illinois customers constituted sufficient contacts with Illinois to allow for an exercise of specific jurisdiction. GoDaddy's website, the vehicle for the transactions at issue, is accessible to any internet user, not just those in Illinois. The processes by which GoDaddy enters into transactions with its online customers are automated – any customer who accesses GoDaddy's website and pays the requisite fee will receive GoDaddy's registration and Parked Page services. The two contracts at issue were formed when Illinois customers sought out GoDaddy via its website, paid the required charges to GoDaddy, and automatically received GoDaddy's online services.

GoDaddy's contracts with Illinois residents do not demonstrate GoDaddy's purposeful availment of the privileges of Illinois law such that GoDaddy should reasonably expect to be subject to jurisdiction in Illinois. The agreements at issue were created at the initiative of Illinois residents; put another way, GoDaddy's contacts with Illinois are the product of the "unilateral activity of . . . a third person." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). To sustain an exercise of specific jurisdiction on the basis of these contacts would run afoul of due process. Furthermore, thousands of customers from all over the United States and other countries

contract with GoDaddy through its website. GoDaddy should not reasonably expect to be haled into court in every one of those states as a result of these internet-based transactions. GoDaddy has tried to avoid just such a result by structuring its terms of service to limit the available venues for suits against it to Arizona only. We therefore hold that GoDaddy has failed to demonstrate sufficient contact between GoDaddy and Illinois to sustain an exercise of specific jurisdiction.

**B.    The Effects Test**

uBID also argues that GoDaddy can be subject to specific personal jurisdiction in this court based on the "effects test" first articulated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984) and applied to the trademark context by the Seventh Circuit in *Indianapolis Colts v. Metro. Balt. Football Club Ltd. P'ship*, 34 F.3d 410 (7th Cir. 1994). The effects test states that a court may exercise personal jurisdiction over a nonresident defendant when (1) the defendant expressly aims its actions to cause harm to the plaintiff in the forum state; and (2) the defendant knows harm to the plaintiff is likely to result from its actions. *Richter v. Instar Enters. Int'l, Inc.*, 594 F. Supp. 2d 1000, 1010 (N.D. Ill. 2009) (*citing Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824 (N.D. Ill. 2000)).

uBID has not shown that GoDaddy either expressly aimed their conduct at Illinois or knew their actions would cause harm to uBID in Illinois. GoDaddy's website

automatically provides services to customers from Illinois and there is no evidence to show that the company expressly aims its conduct at this state. Furthermore, uBID has not demonstrated any knowledge on GoDaddy's part that its registration and parking of certain domain names would cause harm to uBID in Illinois. uBID points to GoDaddy's patent application as evidence that GoDaddy knew its actions would cause harm to uBID in Illinois. The patent application indicates GoDaddy's general awareness of third parties' registration of domain names similar to other trademarked names but does not show that GoDaddy specifically knew its registration and parking of certain domain names specifically hurt uBID in Illinois. Absent a particularized showing of GoDaddy's awareness that its actions harmed uBID in Illinois, GoDaddy cannot be subjected to specific jurisdiction under the effects test.

## CONCLUSION

For the foregoing reasons, GoDaddy's motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) is granted. GoDaddy's motion to transfer to the District of Arizona under 28 U.S.C. § 1404(a) is denied as moot.

Charles P. Kocoras
United States District Judge

Dated:      November 5, 2009

- 13 -