## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UBID, INC., | ) | |
| | ) | Case No. 09 CV 2123 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge Charles P. Kocoras |
| THE GO DADDY GROUP, INC. | ) | |
| and GODADDY.COM, INC., | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ANSWER OF DEFENDANTS
## THE GO DADDY GROUP, INC. AND GODADDY.COM, INC.

**Defendants The Go Daddy Group, Inc. and GoDaddy.com, Inc. (collectively, "Go Daddy") answer the Complaint of Plaintiff uBid, Inc. ("uBid") as follows:**

1.      This is an action under Anticybersquatting Consumer Protection Act ("ACPA" or "Act"), 15 U.S.C.A. § 1125(d), as a result of GoDaddy's illegal internet scheme that generates revenue from the unauthorized taking, use, and monetization of uBID's valuable marks. uBID seeks redress for damages caused to it under the ACPA for GoDaddy's use, registration, trafficking in and/or licensing of "Deceptive Domains", which are domain names that are identical or confusingly similar to uBID's valuable, protected, distinctive and famous marks.

**ANSWER: Go Daddy admits that this purports to be an action under 15 U.S.C. § 1125(d).  Go Daddy denies the remaining allegations in paragraph 1.**

2.      GoDaddy illegally achieves monetary gain by knowingly diverting internet traffic to said Deceptive Domains. The Deceptive Domains in this case are "parked pages" meaning they display no substantive content and are used exclusively for the display of revenue

generating Google AdWords advertisements. GoDaddy derives revenue each time an internet user is directed to the Deceptive Domains and an advertisement is "clicked." GoDaddy has been deriving revenue from more than one hundred Deceptive Domains solely with the intent to profit from advertising on domain names that are confusingly similar to uBID's valuable marks.

**ANSWER: Go Daddy denies the allegations in paragraph 2.**

SUBJECT MATTER JURISDICTION AND VENUE

3.      This is an action for cybersquatting under 15 U.S.C. § 1125(d). This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1331.

**ANSWER: Go Daddy admits that this purports to be an action under 15 U.S.C. § 1125(d), and that this Court has subject matter jurisdiction over this claim.**

4.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim and the actual harm to Plaintiff occurred in this District by reason of the Defendants' conduct as alleged below.

**ANSWER: Go Daddy denies the allegations in paragraph 4.**

PARTIES AND PERSONAL JURISDICTION

5.      Plaintiff uBID is a Delaware corporation with its principal place of business located at Chicago, Illinois 60631. uBID is the leading asset recovery solutions company for the world's most trusted brands having sold over $2 billion of excess inventory over the last eleven years.

**ANSWER: Go Daddy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 and on that basis denies the allegations.**

6.      Defendant The GoDaddy Group Inc. is an Arizona corporation with its principle place of business located at 14455 N. Hayden Rd., Suite 219 Scottsdale, AZ 85260. Its self-described "flagship company" is Defendant GoDaddy.com Inc. which purports to be the world's leading ICANN-accredited domain name registrar for .COM, .NET, .ORG, .INFO, .BIZ and .US domain extensions. It claims to have over twenty-nine (29) million domain names under its management, and boasts that "(a)s an ICANN-accredited domain registrar, GoDaddy has more

names under management than any other registrar and has an array of internet based services."
https://www.godaddy.com/gdshop/about.asp?ci=3823.

**ANSWER: Go Daddy admits that The Go Daddy Group, Inc. is an Arizona corporation with its principal place of business at 14455 N. Hayden Rd., Suite 219, Scottsdale, AZ 85260. Go Daddy admits that GoDaddy.com, Inc. is the flagship company of The Go Daddy Group, Inc. Go Daddy admits that it has over 40 million domain names under its management, that Go Daddy is an ICANN-accredited registrar, and that Go Daddy has more domain names under management than any other ICANN-accredited registrar. Go Daddy denies the remaining allegations in paragraph 6.**

7.      GoDaddy offers its services in interstate commerce, including but not limited to registration, certification, hosting, parking, redirecting, transfers, and monetization through its "parking" program that monetizes participating domains with Google AdWords advertisements. GoDaddy has a number of subsidiary companies, including: Wild West Domains, Inc., Domains by Proxy, Starfield Technologies, and Blue Razor Domains.

**ANSWER: Go Daddy admits that its services are offered in interstate commerce, and that Wild West Domains, Inc., Domains By Proxy, Starfield Technologies, and Blue Razor Domains are subsidiary companies of The Go Daddy Group, Inc. Go Daddy denies the remaining allegations of paragraph 7.**

8.      This Court has personal jurisdiction over Defendants The GoDaddy Group Inc. and GoDaddy.com Inc., because they conduct substantial business within this district, have engaged in acts or omissions within this Judicial District causing injury, have engaged in acts outside this Judicial District causing injury within this Judicial District, and have engaged in conduct related to the unlawful activities at issue in this action causing injury and harm in this Judicial District, and/or has otherwise made or established contacts with this judicial district sufficient to permit the exercise of personal jurisdiction.

**ANSWER: Go Daddy admits that the Seventh Circuit has determined that this Court has personal jurisdiction over Go Daddy. Go Daddy denies the remaining allegations of paragraph 8.**

<u>PLAINTIFF'S BUSINESS</u>

9.     uBID was founded in 1995 and offers and provides a full array of commercial and internet-based auction and sales services. uBID maintains a website at www.uBID.com and RedTag.com which offer products and services in interstate commerce, and generates revenue from: (a) charging the "margin difference" between purchase and selling price on the auction style and fixed price completed transactions on its websites, and (b) through collecting a commission from Certified Merchants (CM), on all items sold from these merchants through its internet-based platforms at both uBID.com and RedTag.com. uBID uses their Marks, as defined below, in connection with its internet based company, and more specifically in providing products and services in interstate commerce.

**ANSWER: Go Daddy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 and on that basis denies the allegations.**

10.     uBID owns the trademarks UBID.com, REDTAG.com and UBID, and trade name UBID (collectively the "uBID Marks"). The uBID Marks were publicized as of 1997 and have been featured on the Internet, in various forms of media advertisements and in stories published throughout the United States.

**ANSWER: Go Daddy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 and on that basis denies the allegations.**

11.     The uBID Marks are widely known and recognized among consumers, retailers and manufacturers, including but not limited to, members of the resale community.

**ANSWER: Go Daddy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 and on that basis denies the allegations.**

12.     The uBID Marks are unique and distinctive and, as such, designate a single source of origin.

**ANSWER: Go Daddy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 and on that basis denies the allegations.**

13.     uBID's Internet website, www.ubid.com, has been registered and used since 1997 and uses the uBID Marks. The website also provides information on many of the products and services offered. uBID's other internet website, www.RedTag.com has been registered since 2000 and the current website in operation since September 2008.

**ANSWER: Go Daddy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 and on that basis denies the allegations.**

14.     uBID's business operations are heavily internet based, and therefore it depends upon internet traffic, and the associated ability of internet users to freely access its website, for the generation of revenue.

**ANSWER: Go Daddy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 and on that basis denies the allegations.**

15.     uBID utilizes several United States registered patents, in connection with its internet business operations, including: U.S. Patent Nos. 5,845,265; 6,202,051; 6,266,651 and pat. pending.

**ANSWER: Go Daddy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 and on that basis denies the allegations.**

16.     uBID's Marks are valid and enforceable trademarks. uBID owns the following United States trademark registrations for its Marks:

a.     Trademark: UBID THE MARKETPLACE YOU CAN TRUST; Registration No. 3065399; Goods and Services Int'l Class 035. US 100 101 102. G & S: On-Line Trading Services in Which the Seller Posts Products to be Auctioned and Bidding is Done Via the Internet; On-Line Retail Store Services Featuring Consumer Electronics, Computer Products, and Multimedia Entertainment Products; First Use: September 24, 2004. Registration Date: March 7, 2006;

b.     Trademark: UBID.COM THE BRAND NAME MARKETPLACE; Registration No. 3048683; Goods and Services Int6l Class 035. US 100 101 102. G & S: On-Line Trading Services in Which the Seller Posts Products to be Auctioned and Bidding is Done Via the Internet; On-Line Retail Store Services Featuring Consumer Electronics, Computer Products, and Multimedia Entertainment Products; First Use: November 30, 2003. Registration Date: January 24, 2006;

c.     Trademark: UBID.COM; Registration No. 2991806; Goods and Services Int6l Class 035. US 100 101 102. G & S: On-Line Trading Services in Which the Seller Posts Products to be Auctioned and Bidding is Done Via the Internet; On-Line Retail Store Services Featuring Consumer Electronics, Computer Products, and Multimedia Entertainment Products; First Use: November 30, 2003. Registration Date: September 6, 2005;

d.     Trademark: UBID.COM; International Registration No. 0960560; Goods and Services Int6l Class 035. US 100 101 102. G & S: Online trading services in which the seller posts products to be auctioned and bidding is done via the internet; online retail store services featuring consumer electronics, computer-related products, home appliances, home improvement, automotive, sports and recreational, multimedia entertainment, toys, jewelry, fragrances, skin care, cosmetics, purses, hand bags, wallets, sunglasses, hats, tools, art, furniture, storage, organization, pet supplies, crafts, food and wine, gardening and planting supplies, and lawn and garden decor; First Use: January 1, 1997. Registration Date: September 6, 2005;

e.     Trademark: UBID; Registration No. 2519050; Goods and Services Int6l Class 035. US 100 101 102. G & S: Disseminating advertising matter for others via electronic communications networks and promoting the goods and services of others through banner advertisements and through the electronic promotion of and auctioning of the goods and services of others online via the global computer network; electronic retailing services by auction and other means, namely, online retail store and auction services in the fields of computer-related, electronic, home appliance, home improvement, automotive, sports and recreational products,

6

offered via the global computer network; First Use: May 1, 1998. Registration Date: December 18, 2001; and

      f.     Trademark: UBID; Registration No. 2229515; Goods and Services US 002 005 022 023 029 037 038 050. G & S: [catalogs for computer-related products, namely, hardware, software, peripherals, accessories, supplies, books and instructional materials]; IC 035. US 100 101 102. G & S: disseminating advertising for others and promoting the goods and services of others through the distribution of printed publications and via on-line telecommunications networks; telephone shop-at-home services, mail-order catalog services, [retail store services] and electronic retailing services via global computer network, all in the field of computer-related products, namely, hardware, software, peripherals, accessories, supplies, books and instructional materials; First Use: May 1, 1998. Registration Date: March 2, 1999.

      g.     Trademark: REDTAG.COM; Registration No. 2535096, Goods and Services IC 035 US 100 101 102. G & S; [computerized on-line retail services offering a variety of consumer merchandise]. First Use: November 10, 1998. Registration Date: November 10, 1998.

     **ANSWER: Go Daddy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 and on that basis denies the allegations.**

     17.     uBID owns numerous domain names which include but are not limited to: www.ubid.com, www.Redtag.com, www.youbid.com, www.Bidville.com, www.ubid.org, www.ubid.net, www.ubidmotors.com, and www.ubid.tv, for commercial use.

     **ANSWER: Go Daddy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 and on that basis denies the allegations.**

     18.     uBID has valid, enforceable, protected and valuable legal rights to the use of said domain names, trademarks, taglines, and trade names, collectively the Distinctive and Valuable Marks, as it has used these Distinctive and Valuable Marks in interstate commerce, for business

purposes, in connection with the sale of goods, services, and its resale operations, as well as, having been featured on the Internet and used in other various forms of advertisements.

**ANSWER: Go Daddy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 and on that basis denies the allegations.**

DEFINITIONS

19.     For purposes of this Complaint, the following terms will be deemed to have the following meanings:

A.     *Deceptive Domains*: as used in this Complaint, means: a domain that is tasted, registered, licensed, monetized, trafficked in and/or otherwise used, for commercial gain, that is identical to or confusingly similar to a Distinctive and Valuable Mark.

B.     *Distinctive and Valuable Marks*: as used in this Complaint, means: venerable, valuable, distinctive, famous, registered or common law trademarks, trade names, logos, famous names, corporate names, domain names, and other such distinctive/valuable marks of uBID.

C.     *Domain Names*: as used in this Complaint, means: a textual identifier registered within the Domain Name System. A domain name comprises two or more components, each separated by a period. The right-most component is the top-level domain, such as .com or .org. Most domain names are registered directly within a top-level domain, e.g. google.com. Domain names consist of letters, numbers, periods, and hyphens, but no other characters.

D.     *Domain Tasting*: as used in this Complaint, means: the practice of domain registrants registering a domain name to assess its profitability for the display of online advertising. Via the tasting procedure, a registrant may return a domain name within five (5) days for a full refund. Domain tasters typically delete domain names that they project to be unprofitable, or delete domain names to avoid the registration fee as part of the "Domain Kiting" process.

E. *Monetize / monetization*: as used in this Complaint, means: the practice of using a domain/website for commercial gain by generating revenue from internet advertising placed/displayed/associated with said domain/website.

F. *Parked Domains*: as used in this Complaint, means: a domain which is undeveloped and contains little or no content, except for revenue generating advertisements.

**ANSWER: Go Daddy admits that uBid purports to assign the listed meanings to the listed terms in paragraph 19. Go Daddy denies that that listed meanings in paragraph 19 are accurate.**

## GO DADDY'S BUSINESS

20. GoDaddy advertises and procures customers by offering "free parking" of a registrant's domain name. Under GoDaddy's "Parked Page Service," GoDaddy will park the registrant's page and place advertisements on web page while GoDaddy is granted the right to collect and retain all revenue obtained from the advertising.

**ANSWER: Go Daddy admits that it provides a parked page service to domain name registrants, and that registrants do not pay a fee for such service. Go Daddy denies the remaining allegations in paragraph 20.**

21. Pursuant to the Domain Name Registration Agreement between GoDaddy and its customers, GoDaddy is the authorized licensee of the registrant for the purpose of placing advertisements for commercial gain on the registrant webpage. Paragraph 8 of GoDaddy's Domain Name Registration Agreement provides:

8. Parked Page Service

The Parked Page Service, includes, but is not limited to, the parking of pages on Go Daddy nameservers, and Starter/For Sale web pages (all parked pages, collectively, the "Parked Page"). For every domain name registered, Go Daddy will provide the Parked Page service free to its customers. Go Daddy will provide You with these services as long as You abide by the terms and conditions set forth

herein and in each of Go Daddy's policies and procedures found here.

If You are using Go Daddy's Parked Page services, You agree that Go Daddy may point the domain name or DNS to one of Go Daddy's or Go Daddy's affiliates web pages, and that they may place advertising on Your web page and Go Daddy specifically reserves this right. Go Daddy also reserves the right to collect and retain all revenue obtained from such advertising. You may terminate Your use of the Parked Page service at any time through Your online account manager.

If You are using Go Daddy's Parked Page service, You are responsible for ensuring that any content placed on Your Parked Page by You or anyone on Your behalf conforms to all local, state, federal, and international laws. Further, You are responsible for ensuring the legal copyright to any images, text, or other web site elements not provided by Go Daddy. In order to use Go Daddy's Parked Page service, You must have a domain name registered with Go Daddy. Go Daddy is not responsible for making back-up copies of Your web site; this is solely Your responsibility. You agree that Go Daddy may place advertising on Your Parked Page and Go Daddy specifically reserves this right. Go Daddy also reserves the right to collect and retain all revenue obtained from such advertising.

**ANSWER: Go Daddy admits that the quoted language in paragraph 21 corresponds to a part of paragraph 8 of Go Daddy's Domain Name Registration Agreement. Go Daddy denies the remaining allegations in paragraph 21.**

22.    GoDaddy, as the authorized licensee of the registrants, has used and trafficked in the domain names listed [in paragraph 22 of the Complaint], with bad with intent to profit from the Distinctive and Valuable Marks of uBID.

**ANSWER: Go Daddy denies the allegations in paragraph 22.**

23.    As part of its services, GoDaddy also offers its customers a "cash parking" service whereby the domain registrant pays a fee to allow GoDaddy, through its advertising partner, Google, to place ads on the registrant's web page. The revenue generated through this

advertising is then split between the registrant, GoDaddy, and GoDaddy's advertising partner, Google.

**ANSWER: Go Daddy admits that it provides a CashParking service to domain name registrants, and that registrants pay a fee for such service. Go Daddy denies the remaining allegations of paragraph 23.**

24.     The "CashParking" provision of the GoDaddy's Domain Registration Agreement provides as follows:

> CashParking is a service that enables you to earn money on your parked domains. If you associate your domains with your CashParking account, our advertising partner places context-relevant advertisements on your page. Each time a visitor clicks a displayed advertisement, you receive a share of the generated click-through revenue based on your CashParking plan (60% to 80% of the generated revenue). The amount you receive and the price you pay for the CashParking service depends on the plan you select. You can add an unlimited number of domains to your CashParking account.

**ANSWER: Go Daddy denies the allegations in paragraph 24.**

25.     GoDaddy, as the authorized licensee of the registrants under the CashParking service, has used and/or trafficked in the following domain names, with bad with [sic] intent to profit from the Distinctive and Valuable Marks of uBID: ubiddz.com, youbididoit.com, youbidido.com, ubidmotor.com ubidido.com ubididoit.com.

**ANSWER: Go Daddy denies the allegations in paragraph 25.**

26.     As part of its services GoDaddy also offers an auction service to sell and/transfer a domain names for a fee. On February 9, 2009 GoDaddy trafficked in the infringing Deceptive Domains with bad faith intent to profit from uBID's Distinctive and Valuable Marks: ubiddiamonds.biz, ubidpests.biz, ubidfume.com, ubidpests.info, ubidpests.net, ubidtermite.biz, ubidorbuyit.com, ubidfume.info, ubidfume.net, ubidfume.org, ubidtermite.info, ubidtermite.net, ubidtermite.org, ubidirect.com, ubiditproject.com, ubiditprojects.com, ubid4.me,

ubidauctionsale.com, ubidauctionsales.com, ubidsold.com, ubid-online.com, ubidless.com, ubid.ws, ubid.info, and ubid.name.

**ANSWER: Go Daddy admits that it provides an auction service to domain name registrants, and that registrants pay a fee for such service. Go Daddy denies the remaining allegations in paragraph 26.**

COUNT I

27.     Plaintiff hereby repeats and re-alleges all of the preceding paragraphs as though fully set forth herein.

**ANSWER: Go Daddy incorporates its responses to the paragraphs above as if fully restated here.**

28.     In 1999, Congress passed the Anticybersquatting Consumer Protection Act ("ACPA" or "Act"), 15 U.S.C.A. § 1125(d), to protect consumers and American businesses, to promote the growth of online commerce, and to provide clarity in the law for trademark owners.

**ANSWER: Go Daddy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 and on that basis denies the allegations.**

29.     15 U.S.C. 1125(d) provides:

(d) Cyberpiracy prevention

(1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—

    (i)     has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

    (ii)     registers, traffics in, or uses a domain name that—

        (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

        (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

(III) is a trademark, word, or name protected by reason of section 706 of title 18 or section 220506 of title 36.

**ANSWER: Go Daddy admits the allegations in paragraph 29.**

30.     15 U.S.C. 1125 (d)(E) provides:

As used in this paragraph, the term "traffics in" refers to transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration.

**ANSWER: Go Daddy denies the allegations in paragraph 30.**

31.     Accordingly, Congress enacted the ACPA to include not only individuals and companies who register domain names, but rather, to apply equally to three classes of persons/entities: (1) registrants of the Deceptive Domains; (2) anyone who "uses" the domain name which is defined as the registrant or the "authorized licensee" of the registrants of the Deceptive Domains; and (3) anyone who "traffics in" Deceptive Domains, which refers to anyone involved in any transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration, whether or not the person is the registrant of the Deceptive Domain.

**ANSWER: Go Daddy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 and on that basis denies the allegations.**

32.     Congress drafted the ACPA to prevent the use, licensing, pledging, trafficking in, or any other exchange of consideration for the use of the Deceptive Domain Names. GoDaddy's conduct in monetizing the infringing Deceptive Domains is the very conduct which Congress declared to be illegal.

**ANSWER: Go Daddy denies the allegations in paragraph 32.**

33.     As alleged herein, GoDaddy's acted as the authorized licensee of the registrants and used the infringing Deceptive Domains in violation of the ACPA, with bad faith intent to profit from uBID's Distinctive and Valuable Marks.

**ANSWER: Go Daddy denies the allegations in paragraph 33.**

34.    GoDaddy's acts as alleged herein constitute the use of and trafficking in infringing Deceptive Domains, in violation of the ACPA with bad faith intent to profit from uBID's Distinctive and Valuable Marks.

**ANSWER: Go Daddy denies the allegations in paragraph 34.**

35.    GoDaddy's acts as alleged herein constitute cyberpiracy, cybersquatting, and/or typosquatting, in violation of the ACPA.

**ANSWER: Go Daddy denies the allegations in paragraph 35.**

36.    uBID's Distinctive and Valuable Marks are distinctive, famous, venerable, valuable, and or federally registered at the USPTO at the time GoDaddy, registered, trafficked in or acted as the authorized licensee of a registrant and used the Deceptive Domains.

**ANSWER: Go Daddy denies the allegations in paragraph 36.**

37.    The infringing Deceptive Domains as identified in paragraphs 25, 28, and 29 are identical or confusingly similar to uBID's Distinctive and Valuable Marks.

**ANSWER: Go Daddy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37 and on that basis denies the allegations.**

38.    GoDaddy does not have any intellectual property rights or any other rights in uBID's Distinctive and Valuable Marks.

**ANSWER: Go Daddy denies the allegations in paragraph 38.**

39.    None of the infringing Deceptive Domains consist of the legal name of GoDaddy, or a name that is otherwise commonly used to identify GoDaddy.

**ANSWER: Go Daddy admits that none of the domain names listed in uBid's Complaint contain the letter string "godaddy." Go Daddy denies the remaining allegations in paragraph 39.**

40.    GoDaddy has never made any prior use of any of the infringing Deceptive Domains in connection with the bona fide offering of any goods or services.

**ANSWER: Go Daddy admits that it has never used any of the domain names listed in uBid's Complaint as trademarks. Go Daddy denies the remaining allegations in paragraph 40.**

41.     GoDaddy trafficked in and used the infringing Deceptive Domains to divert consumers from uBID's websites to websites accessible from the infringing Deceptive Domains. GoDaddy thereby created a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the infringing Deceptive Domain websites.

**ANSWER: Go Daddy denies the allegations in paragraph 41.**

42.     GoDaddy offered to transfer, sell, or otherwise assign the infringing Deceptive Domains for financial gain without having used, or having the intent to use, the infringing Deceptive Domains in the bona fide offering of any goods or services.

**ANSWER: Go Daddy denies the allegations in paragraph 42.**

43.     GoDaddy has used, trafficked in, and acted as registrant's authorized licensee in the infringing Deceptive Domains which it knew were identical or confusingly similar to the protected and Distinctive and Valuable Marks of uBID's, which were distinctive at the time of the registration and continue to be distinctive.

**ANSWER: Go Daddy denies the allegations in paragraph 43.**

44.     GoDaddy's trafficking in, and/or use, as the authorized licensee of the registrant, of the infringing Deceptive Domains constitutes cybersquatting in violation of 15 U.S.C. § 1125(d).

**ANSWER: Go Daddy denies the allegations in paragraph 44.**

45.     By reason of Defendants' acts alleged herein, remedy at law is not adequate to compensate them for the injuries inflicted by GoDaddy. Accordingly, uBID is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

**ANSWER: Go Daddy denies the allegations in paragraph 45.**

46.     By reason of GoDaddy's acts alleged herein, uBID is entitled to recover GoDaddy's profits, actual damages and the costs of the action, or, on uBID's election, statutory

damages under 15 U.S.C. § 1117, in an amount up to One Hundred Thousand Dollars ($100,000) per Deceptive Domain name infringement. Further, this is an exceptional case making uBID eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

**ANSWER: Go Daddy denies the allegations in paragraph 46.**

## GENERAL DENIAL

**Go Daddy further denies any of the allegations in uBid's Complaint which are not specifically admitted in the responses set forth above.**

## AFFIRMATIVE DEFENSES

Go Daddy alleges the following affirmative and other defenses, reserving the right to modify, amend, and/or expand upon these defenses as discovery proceeds.

### First Affirmative Defense

### (Failure to State a Claim)

As an affirmative defense to uBid's Complaint, and to each and every claim for relief contained therein, Go Daddy alleges, without admitting that uBid was injured or damaged in any manner or amount whatsoever, that uBid's Complaint, and each cause of action asserted therein, is barred in whole or in part because uBid's Complaint and each cause of action asserted therein fails to state facts sufficient to constitute a claim upon which relief can be granted against Go Daddy.

### Second Affirmative Defense

### (Estoppel)

uBid is barred from relief in this action under the doctrine of estoppel.

### Third Affirmative Defense

### (Waiver)

uBid is barred from relief in this action under the doctrine of waiver.

16

### Fourth Affirmative Defense

### (Laches)

uBid is barred from relief in this action under the doctrine of laches.

### Fifth Affirmative Defense

### (Unclean hands)

uBid's claims are barred by the doctrine of unclean hands.

### Sixth Affirmative Defense

### (Standing)

uBid is barred from relief because it lacks standing to bring this action.

### Seventh Affirmative Defense

### (Misrepresentation of Material Facts)

As an affirmative defense to uBid's Complaint, and to each and every claim for relief contained therein, Go Daddy alleges, without admitting that uBid was injured or damaged in any manner or amount whatsoever, that uBid is barred from any and all recovery on each and every alleged cause of action on the ground that uBid's claims are barred by the defense of misrepresentation of material facts.

### PRAYER FOR RELIEF

WHEREFORE, Go Daddy respectfully requests this Court:

1.   Order that uBid take nothing from its Complaint;

2.   Grant an award of actual attorneys' fees and costs incurred by Go Daddy against uBid, this case being exceptional;

3.   Award Go Daddy such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Go Daddy respectfully

demands a trial by jury as to all issues that cannot be resolved as a matter of law.

Respectfully submitted,

Dated: October 13, 2010

**THE GO DADDY GROUP, INC.**
**GODADDY.COM, INC.**

By: _____ /s/ John L. Slafsky _____
John L. Slafsky

John L. Slafsky *(admitted pro hac vice)*
Hollis Beth Hire *(admitted pro hac vice)*
WILSON SONSINI GOODRICH & ROSATI P.C.
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

Tonia Ouellette Klausner *(admitted pro hac vice)*
WILSON SONSINI GOODRICH & ROSATI P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

Steven P. Mandell (ARDC #6183729)
MANDELL MENKES LLC
333 West Wacker Drive, Suite 300
Chicago, IL 60606
Telephone: (312) 251-1000
Facsimile: (312) 251-1010

## CERTIFICATE OF SERVICE

I, John L. Slafsky, an attorney, certify that I have caused to be served a true and correct copy of Answer of Defendants The Go Daddy Group, Inc. and GoDaddy.com, Inc. via ECF this 13th day of October, 2010.

By: \_\_\_\_\_ /s/ John L. Slafsky _____
                John L. Slafsky